UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                                          Chapter 13

Lorraine Teresa Cunningham,                                   Case No. 1-11-50167 (CEC)
*aka* Cunningham-Morris

                Debtor.
-----------------------------------------------------------x

## DECISION

APPEARANCES:

Dennis Giacomo Vilella, Esq.  
Dennis Giacomo Vilella, PC  
225 Broadway  
Suite 2008  
New York, NY  10007  
*Counsel for the Debtor*

Eric Waxman, III, Esq.  
Richard Harrison, Esq.  
Westerman Ball Ederer Miller & Sharfstein  
1201 RXR Plaza  
Uniondale, NY  11556  
*Counsel for Rossrock Fund II LP and RR REO II LP*

James P. Truitt, III, Esq.  
Office of Thomas G. Sherwood, LLC  
300 Garden City Plaza  
Suite 222  
Garden City, NY  11530  
*Counsel for MPJM Crush Holdings, LLC*

CARLA CRAIG  
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of secured creditor Rossrock Fund II LP ("Rossrock") and RR REO II LP ("RR REO") to reopen this chapter 13 bankruptcy case or in the alternative obtain relief from the dismissal order, and to annul the automatic stay <u>nunc pro tunc</u> to December 2, 2011. As of the petition date, Rossrock held a mortgage on real property located at 3195 Fulton Avenue, Brooklyn, New York ("Property") and had commenced proceedings against Lorraine Teresa Cunningham ("Cunningham" or "Debtor") to foreclose on the mortgage. After the Debtor filed a bankruptcy petition, which listed an incorrect address for Rossrock, the state court entered a judgment of foreclosure and sale. After the Debtor's chapter 13 case was dismissed, Rossrock sold the Property to a captive business entity, RR REO, and subsequently sold the Property to a third party purchaser, MPJM Crush Holdings, LLC ("Crush Holdings"). Rossrock claims that it had no knowledge of the Debtor's bankruptcy case and that its lack of notice and other circumstances provide cause to annul the automatic stay and validate the transfers of the Property.

A hearing on the motion was held on June 13, 2013. At that hearing, the Court gave the parties the opportunity to brief whether relief from the dismissal order was warranted under Rule 60(b)(6) of the Federal Rules of Civil Procedure. Rossrock filed an additional brief on June 28, 2013. On July 18, 2013, the Debtor, pro se, filed an affirmation in opposition. Because the Debtor in her affirmation for the first time alleged that she personally sent notice of her bankruptcy case to Rossrock, the Court held an evidentiary hearing limited to the issue of Rossrock's notice of the bankruptcy case.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order

dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

## BACKGROUND

The following facts are undisputed, or are found by the Court, based upon the entire record of this case and the records of the Debtor's prior bankruptcy cases.

On February 22, 2006, the Debtor executed a note and mortgage secured by the Property. Motion to Reopen Case and Annul the Automatic Stay ("Motion"), Exs. A & B, ECF No. 23.[1] Greenpoint Mortgage Funding, Inc. was the initial mortgagee and holder of the note.  Mot. Exs. A & B, ECF No. 23.  The Debtor signed a deed on January 24, 2008 transferring title of the Property to The Cunningham Family Land Trust, but the Debtor did not record this deed until October 25, 2010.  Mot. Ex. J, ECF No. 23.  Rossrock obtained the note and mortgage by assignment in 2008, and commenced a foreclosure action on May 14, 2008.  Mot ¶ 6, ECF No. 23.  Rossrock was granted summary judgment in June 2011.  Mot. ¶ 7, ECF No. 23.  Unaware that the Debtor had filed a bankruptcy petition on December 2, 2011, the state court issued a judgment of foreclosure and sale ("Foreclosure Judgment") on December 9, 2011.  Mot. Ex. D, ECF No. 23.  After dismissal of the Debtor's bankruptcy case on February 10, 2012, a foreclosure sale was held and the Property was conveyed to Rossrock by referee's deed dated March 29, 2012.  Dismissal Order, ECF No. 19; Mot. Exs. G & H, ECF No. 23.  On the same day, Rossrock conveyed the Property to RR REO, an affiliated business entity, which in turn conveyed it to a third party, Crush Holdings.  Mot. Ex. I, ECF No. 23; Proffer Ex. 3, ECF No. 57.

This case is the Debtor's third chapter 13 case.  The first case was filed on July 3, 2008, and dismissed on September 12, 2008 on motion of the chapter 13 trustee, based on the Debtor's

---

[1] "ECF No." refers to the record of Case Number 11-50167, unless otherwise indicated.

failure to make plan payments and provide required documents to the trustee. Case No. 08-44241, ECF Nos. 1, 18, 20. The second case was filed on April 6, 2009 and automatically dismissed on July 6, 2009 because the Debtor failed to file schedules. Case No. 09-42684, ECF Nos. 1, 15. The instant case was filed on December 2, 2011. Case No. 11-50167, ECF No. 1.

When the Debtor filed this bankruptcy petition, she submitted a "verified creditor matrix," which is a list of creditors and their addresses. Tr. 28:6-18.[2] The Clerk of the Court uses the addresses provided on the creditor matrix to notify creditors of the Debtor's bankruptcy filing and subsequent events in the Debtor's case. Although the Debtor had documents listing Rossrock's address, Cunningham completed the creditor matrix from memory, and in doing so listed an incorrect address for Rossrock.[3] The correct address for Rossrock is 150 East 52nd Street, 27th Floor, New York, NY 10022, but the Debtor erroneously listed Rossrock's address as 150 East *27th Street*, New York, NY 10022. Mot. ¶¶ 24-25, ECF No. 23; Petition, ECF No. 1. As a result of this mistake, the notice of bankruptcy filing mailed to Rossrock was undeliverable, and the United States Postal Service ("USPS") returned the notice to the Debtor on or about December 18, 2011. Tr. 13:19-22. It is therefore undisputed that Rossrock did not have notice of the Debtor's pending bankruptcy case when the state court issued the Foreclosure Judgment on December 9, 2011.

In an attempt to correct her mistake, the Debtor placed the returned notice of bankruptcy filing inside another envelope and took that envelope to the post office to re-send the notice to Rossrock. Tr. 13:1-10. At the post office, the Debtor again addressed the letter (the "December 19 Letter") by memory, this time writing the correct street number. Tr. 45:20-23. In her

---

[2] "Tr." refers to the transcript of the evidentiary hearing held on October 24, 2013. ECF No. 59.
[3] After entering into a forbearance agreement with Rossrock on October 19, 2009, the Debtor received payment books and a letter reflecting the correct address for Rossrock. Tr. 41:4 - 43:8. The Debtor mailed five payments to Rossrock under the terms of that forbearance agreement. Tr. 42:7-23.

admitted "haste," however, Cunningham neglected to include Rossrock's floor on the envelope. Tr. 45:17-19. The Debtor has a certificate of mailing and register receipt as evidence of her mailing of the December 19 Letter. ECF No. 39, Ex. A; ECF No. 43, Ex. B.

Despite Cunningham's assertion that she intended that Rossrock "be a part of" the bankruptcy, the Debtor did not make any further effort to contact Rossrock in connection with her chapter 13 case. Tr. 48:1-16. Furthermore, Cunningham did not notify the Clerk's office of Rossrock's correct address, although all debtors receive instructions to contact the Clerk's office to correct an incorrect creditor address.[4] Tr. 31-33. As a result, all subsequent court mailings were sent to Rossrock's erroneous address. Cunningham testified that she intended to use chapter 13 to file a plan that would cure the arrears on the Property, Tr. 10:12-17, but the Debtor's proposed chapter 13 plan contemplated 36 payments of $100 each, which would have been grossly inadequate to satisfy Rossrock's arrears, which, as of the petition date, consisted of 50 missed payments and the resulting interest accrual. Mot. Ex. A ¶ 6, ECF No. 23. The chapter 13 trustee moved to dismiss the case for Cunningham's failure to make any pre-confirmation plan payments or submit other required documents. Trustee's Mot. to Dismiss, ECF No. 15. The Debtor did not oppose the trustee's motion, and the Court dismissed the case on February 10, 2012. Dismissal Order, ECF No. 19.

At some point after the dismissal of the bankruptcy case, the Debtor made a motion in state court to vacate the judgment of foreclosure and sale (the "Vacatur Motion"). Mot. ¶ 39, ECF No. 23; Tr. 69:11-13. The Debtor also filed an order to show cause in February 2013,

---

[4] Official Form 9I, the "Notice of Chapter 13 Filing, Meeting of Creditors, and Deadlines," is sent to a chapter 13 debtor and all creditors. This two page notice, which was sent to the Debtor by the Bankruptcy Court for the Eastern District of New York, reads:
> Undeliverable Notices[:] Undeliverable notices will be sent by return mail to the debtor. It is the debtor's responsibility to obtain the parties correct address, resend the returned notice, *and notify this office of the parties change of address*. Failure to provide all parties with a copy of the notice may adversely affect the debtor as provided by the Bankruptcy Court.

ECF No. 4, at 2 (emphasis added).

seeking an order restraining any transfers, assignments, or encumbrances pending determination of the motion to vacate. Mot. ¶ 40, ECF No. 23. By order dated April 8, 2013, the state court directed Rossrock to file this motion with this Court to determine the applicability the automatic stay to Rossrock's foreclosure sale and, if applicable, seek relief. Mot. Ex. S, ECF No. 23.

Rossrock contends that it never received the December 19 Letter. Rossrock, through the testimony of its principal, James Ross ("Ross"), alleges that it did not become aware of the Debtor's third bankruptcy case until after the Property was transferred to Crush Holdings, when the Debtor referred to her bankruptcy case in the Vacatur Motion. Tr. 69:9-16. Ross is the only person who reviews legal notices sent to Rossrock, and Ross instructed employees in his absence to place any legal notices on his desk. Tr. 67-68.

On April 25, 2013, Rossrock and RR REO brought a motion to reopen this case pursuant to § 350 of the Bankruptcy Code, or, in the alternative, to vacate the order of dismissal pursuant to Rule 60(b)(3) and (4) of the Federal Rules of Civil Procedure, as made applicable in bankruptcy by Rule 9024, in order to allow it to seek nunc pro tunc relief from the automatic stay.[5] Mot., ECF No. 23. The Debtor filed opposition to the Motion. Opp., ECF No. 27. On June 12, 2013, Crush Holdings filed a joinder to the Motion, explaining that, after acquiring the Property from RR REO, it had expended substantial funds improving the Property and renegotiating the terms of its mortgage. Joinder, ECF No. 28. The Court subsequently held an evidentiary hearing, at which Cunningham and Ross both testified.

---

[5] Unless otherwise indicated, "Section" or "§" refers to a section under title 11 of the United States Code (the "Bankruptcy Code"), and "Rule" or "R." refers to the Federal Rules of Bankruptcy Procedure.

## DISCUSSION

**A.     Whether Rossrock Had Notice or Actual Knowledge of the Bankruptcy Case**

This Motion presents two legal issues: first, whether the order dismissing this bankruptcy case should be vacated under Rule 60(b)(6) to permit Rossrock to seek retroactive relief from the automatic stay, and second, if so, whether such retroactive relief should be granted. As Rossrock's notice and knowledge of the bankruptcy filing is relevant to both issues, this question will be addressed first.

The parties dispute whether Rossrock had notice of the Debtor's bankruptcy petition prior to the foreclosure sale and subsequent transfer of the Property. The Debtor claims that the December 19 Letter put Rossrock on notice of the bankruptcy case. Rossrock claims that it never received the December 19 Letter, and that, because the December 19 Letter lacked a suite or floor number, the Debtor's mailing of it was insufficient to invoke a presumption of delivery that would put Rossrock on notice of the filing. Rossrock asserts that it had no notice or actual knowledge of the Debtor's case until July 2012, when the Debtor made reference to her bankruptcy case in the Vacatur Motion in the state court action.[6] Mot. ¶ 39, ECF No. 23; Tr. 69:9-16.

It is well settled that "mail which is properly addressed, stamped and deposited in the mail system creates a rebuttable presumption of receipt by the party to whom it has been addressed." Cablevision Sys. Corp. v. Malandra (In re Malandra), 206 B.R. 667, 673 (Bankr. E.D.N.Y. 1997) (citing In re R.H. Macy & Co., 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993)). If a presumption of receipt arises, the addressee's allegation of non-receipt is insufficient to rebut the presumption. Id.; In re Wintrade, Inc., No. 01-13007-AJG, 2007 WL 3104029, at *1 (Bankr.

---

[6] Rossrock recalls the approximate date as July 2012, Tr. 69:11-13, while the Debtor refers to August 2012, Tr. 21:10-11. The difference is insignificant, so July 2012 will be used hereinafter.

S.D.N.Y. Oct. 22, 2007). Where a sender makes a minor mistake in addressing a letter, courts have found that a weakened presumption of receipt may arise. See In re Horton, 149 B.R. 49, 57-58 (Bankr. S.D.N.Y. 1992) (recognizing the doctrine of a weakened presumption of receipt, but not applying it under the circumstances); In re Randbre Corp., 66 B.R. 482, 486 (Bankr. S.D.N.Y. 1986); see also In re La Rouche Indus., Inc., 307 B.R. 774, 779-81 (D. Del. 2004) (finding no presumption arose or, in the alternative, a weakened presumption of receipt arose when mail was addressed to "Drive Hicks Boulevard" instead of the correct street, "Doctor Hicks Boulevard"); In re Longardner & Assocs., Inc., 855 F.2d 455, 460 (7th Cir. 1988) ("[T]he presumption of delivery may be weakened by the absence of a zip code . . . .").

When a court must determine whether a mailing, notwithstanding a defect in the address, raises a presumption of delivery, or whether, because of the defect, the mailing raises no presumption of delivery or a weakened presumption, courts may weigh a variety of factors. See, e.g., In re Randbre Corp., 66 B.R. at 486 (No presumption arose where letter was mailed to 660 E. 15 Mile Rd. instead of *6600* East 15 Mile Rd., despite assistant postmaster's statement that the incorrectly addressed letter would nonetheless be delivered, and a "test" where two incorrectly addressed pieces were mailed and actually delivered.). A court may consider whether the party receives other correspondence containing the same improper address. De La Cruz v. De La Cruz, 176 B.R. 19, 22-23 (B.A.P. 9th Cir. 1994) (holding that the omission of addressee's company name, floor number, and last four digits of the "ZIP+4" code nonetheless raised a presumption that creditor received bankruptcy court notice, in part because creditor received a subsequent notice with the same flawed address); In re STN Enterprises, Inc., 94 B.R. 329, 335 (Bankr. D. Vt. 1988). If the recipient is a well-known person or entity, a "less definite address or designation has been required." In re Amer. Properties, Inc., 30 B.R. 239, 244 (Bankr. D. Kan.

1983). The fact that mail was not returned to the sender as undeliverable may be considered, but is not dispositive of whether a full presumption or weakened presumption of receipt arose. La Rouche Indus., 307 B.R. at 780; see STN Enterprises, 94 B.R. at 334-35 (Presumption of receipt was weakened because ZIP Code was incorrect by one digit, but full presumption was then restored because of other factors, including that mail was not returned as undeliverable.); Longardner & Assocs., 855 F.2d at 460.

  The Debtor mailed the December 19 Letter to Rossrock at the correct street address, but neglected to include Rossrock's suite or floor number. Rossrock is not a well-known corporation; moreover, approximately 100 other companies operate at 150 East 52nd Street, Tr. 77:15-17, which makes it more important that mail to Rossrock contain a floor or suite number. As of December 2011, Rossrock and its eight employees occupied one of several suites on the 27th floor. Tr. 77:9-14. Although Rossrock has, at times, received letters that lacked a suite or floor number, it is impossible to know how many similarly addressed letters were not successfully delivered to Rossrock. Tr. 76-77. The December 19 Letter may have been delivered to any of the 100 other firms in the building. It cannot be assumed that another recipient would know Rossrock was located in the building or would take the effort to forward the letter to Rossrock. For this reason, a weakened presumption arises. See In re Main, 157 B.R. 786, 788 (W.D. Pa. 1992) (holding that letter sent to proper address, but lacking any indication of a person or department, did not provide creditor with actual notice, because employee who received the letter would not know where to direct it). The December 19 Letter was not returned to the Debtor as undeliverable, which is a factor that could weigh in favor of a full presumption of receipt. La Rouche Indus., 307 B.R. at 780. However, Cunningham did not testify whether she included a return address on the envelope or whether she took proper care in writing a return

address.[7]  Accordingly, the allegation that the December 19 Letter was not returned as undeliverable does not restore the full presumption of delivery.  For these reasons, the evidence presented by the Debtor concerning the mailing of the December 19 Letter to Rossrock creates a weakened presumption of delivery.

A weakened presumption of delivery may be rebutted by testimony of non-receipt.  See La Rouche Indus., 307 B.R. at 781.  Ross testified credibly concerning Rossrock's procedures and his non-receipt of the December 19 Letter.  He testified that if the December 19 Letter were delivered to Rossrock's suite, an employee would give the letter to him, since that was the established procedure for handling legal notices at the firm.  Tr. 64:17-24; Tr. 67:17-22.  Ross testified that he never received the December 19 Letter.  Tr. 69-70.  He testified that if an employee had given him the December 19 Letter, he would have reviewed it and then had it electronically scanned, filed, and emailed to appropriate outside counsel.  Tr. 64-65; Tr. 67:8-13.  In fact, in July 2012 when Ross received Cunningham's Vacatur Motion in the foreclosure proceeding, Ross did just that: he scanned the Vacatur Motion and emailed it to Rossrock's foreclosure counsel.  Tr. 69:11-21.  After conducting a search of its files and email records, Rossrock could not find any scanned copies of the December 19 Letter or any record of receiving it.  Tr. 81:14-24.  Ross's testimony concerning Rossrock's mail handling procedures, that he did not receive the December 19 letter, and that a diligent search revealed no record of its receipt, is sufficient to rebut the weakened presumption of delivery.

---

[7] It appears the return address on the December 19 Letter was incomplete.  On the Debtor's petition and in her testimony, she identifies her residence as "Apt 1."  Petition, ECF No. 1; Tr. 17:12-14.  There are at least four apartments at the Property.  Tr. 19.  The "From:" field of the certificate of mailing contains Cunningham's address at the Property, but it does not contain an apartment number.  Cert. of Mailing, ECF No. 39, Ex. A.  If the certificate of mailing shows the return address placed by Cunningham on the December 19 Letter, the return address was incomplete.

Based upon Ross's credible testimony, the Court finds that Rossrock did not receive the December 19 Letter. Thus, Rossrock had no notice or knowledge of the Debtor's bankruptcy until July 2012, when Cunningham made reference to the bankruptcy in the Vacatur Motion. Having resolved this factual issue, it is appropriate to address the legal issues, which turn, in part, on it.

**B.     Reopening the Bankruptcy Case or Vacating the Dismissal Order**

When a case has been dismissed, rather than fully administered, a party seeking to reopen the case may not do so under section 350(b) of the bankruptcy code. See Critical Care Support Servs., Inc. v. United States, (In re Critical Care Support Servs.), 236 B.R. 137, 140-41 (E.D.N.Y. 1999). The Debtor's case was dismissed and not fully administered. See id. Thus, a motion to reopen this case is properly considered as a motion to vacate the dismissal under Federal Rule of Civil Procedure 60, made applicable by Rule 9024.

Subsection (6) of Federal Rule of Civil Procedure 60(b) allows an order to be vacated for "any other reason that justifies relief." This provision applies only upon a showing of "extraordinary circumstances." See Liljberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988). "A motion under Rule 60(b) is addressed to the sound discretion of the trial court and this discretion is especially broad under subdivision (6), because relief under it is to be granted when appropriate to accomplish justice." In re Emergency Beacon Corp., 666 F.2d 754, 760 (2d Cir. 1981) (quotations omitted).

The circumstances presented in this case warrant relief from the order of dismissal. Because Rossrock lacked knowledge of the bankruptcy case, it had no opportunity to seek relief from the automatic stay during its pendency. In the absence of knowledge of the bankruptcy case, it obtained the Foreclosure Judgment, and in reliance on that judgment, went through with

the foreclosure sale nearly four months later, almost two months after the case had been dismissed. Having not learned of the bankruptcy case until July 2012, Rossrock would be severely prejudiced if the Foreclosure Judgment, and all subsequent proceedings and transactions based upon it, were vacated.

Moreover, the hallmark of the existence of extraordinary circumstances is a lack of fault by the moving party. See 12 Moore's Federal Practice, at Section 60.48[3][b] (Matthew Bender 3d Edition). Rossrock was not at fault for its lack of timely knowledge of the bankruptcy case, which would have enabled it to seek this relief while the case was pending. Rather, the Debtor is at fault for incorrectly listing Rossrock's address on her petition, mailing notice to Rossrock at an incomplete address, neglecting to notify the Clerk's office of Rossrock's correct address, and failing to otherwise contact Rossrock about her bankruptcy case, even though she knew of the pending foreclosure action. Tr. 11:4-21. It is important to note that, unlike a situation where a debtor seeks to reopen the case to obtain a determination that the creditor's action was taken in violation of the automatic stay, where a state court may make the necessary determination, Rossrock has no recourse to seek annulment of the stay except in bankruptcy court. See In re Siskin, 258 B.R. 554, 562 (Bankr. E.D.N.Y. 2001) ("[I]t is undisputed that only a bankruptcy court has jurisdiction to terminate, annul, or modify the automatic stay.") (quotations and emphasis omitted).

## C.    Annulment of the Automatic Stay

Pursuant to § 362(a), the filing of a bankruptcy petition stays all judicial proceedings against a debtor. 11 U.S.C. § 362(a). Rossrock does not dispute that the December 9, 2011 entry of the Foreclosure Judgment was stayed by Cunningham's December 2, 2011 bankruptcy filing, but Rossrock asserts that there are grounds to retroactively annul the stay.

"When an action has been commenced in violation of the stay, that action can only be made legitimate by an order retroactively validating the action." In re WorldCom, Inc., 325 B.R. 511, 519 (Bankr. S.D.N.Y. 2005). Because the automatic stay is not "an immutable article of faith," the Court has discretionary power to annul the stay in appropriate circumstances. In re Soares, 107 F.3d 969, 976 (1st Cir. 1997). In exercising this discretion, courts have considered several factors, including:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay;
> (2) if the debtor has acted in bad faith;
> (3) if there was equity in the property of the estate;
> (4) if the property was necessary for an effective reorganization;
> (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation;
> (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and
> (7) if the creditor has detrimentally changed its position on the basis of the action taken.

In re Stockwell, 262 B.R. 275, 281 (Bankr. D. Vt. 2001). The parties' respective errors may also be evaluated when determining whether to grant or deny stay relief. Soares, 107 F.3d at 978. Although the factors in Stockwell and Soares may be consulted, "[t]he Second Circuit has not explicitly set forth particular factors that bankruptcy courts must analyze before granting relief from the automatic stay." Koutsagelos v. PII SAM, LLC, No. 12-CV-1703-NGG, 2013 WL 2898120, at*4 (E.D.N.Y. June 13, 2013).

Application of the first Stockwell factor supports annulling the stay. As discussed above, Rossrock did not have actual or constructive knowledge of the Debtor's third bankruptcy while the case was pending. Thus, Rossrock did not know that the Foreclosure Judgment was entered in violation of the automatic stay until after the Property was conveyed to Crush Holdings.

With respect to the second <u>Stockwell</u> factor, Cunningham's bad faith in the filing and prosecution of this bankruptcy case also weighs in favor of granting retroactive stay relief. Courts have granted *nunc pro tunc* stay relief based upon a debtor's bad faith alone. See, e.g., <u>NKL Enterprises, LLC v. Oyster Bay Mgmt. Co.</u>, No. 12-CV-5091-ADS, 2013 WL 1775051, at *6 (E.D.N.Y. Apr. 25, 2013) (listing cases); <u>In re Albany Partners, Ltd.</u>, 749 F.2d 670, 675 (11th Cir. 1984) (affirming order granting retroactive stay relief, despite creditor's knowledge of bankruptcy case, primarily because debtor did not file petition in good faith); <u>In re Webb</u>, 294 B.R. 850, 853-54 (Bankr. E.D. Ark. 2003) (annulling stay based on debtor's bad faith in filing and prosecuting its current and past bankruptcy cases). The Debtor's December 2, 2011 petition was the Debtor's third bankruptcy filing in three years. The Debtor has not described any change in circumstances that, as of December 2011, would have enabled the Debtor's third bankruptcy case to conclude any differently than the previous two cases. Indeed, in the third bankruptcy case, the Debtor filed a skeletal petition, failed to file all documents, failed to make pre-confirmation payments to the trustee, and failed to file a plan that addressed the Property's mortgage arrears. When filing her third petition, the Debtor was aware of Rossrock's foreclosure action, Tr. 11:4-21, but the Debtor took little care to make sure Rossrock was aware of the bankruptcy. Despite assertions that she filed her petition with the intent to cure her arrears owed to Rossrock in her chapter 13 plan, the Debtor's actions do not support such a conclusion and instead tend to show the Debtor's bad faith.

With respect to the third <u>Stockwell</u> factor, the Debtor holds no equity in the Property. In a deed dated January 24, 2008 and recorded October 26, 2010, Cunningham transferred ownership of the Property to the "Cunningham Family Land Trust." Mot. Ex. J, ECF No. 23. It is unclear whether the Debtor has an interest in the Property via an interest in the Cunningham

Family Land Trust. In addition, separate from the effect of the Debtor's deed of the Property to the land trust, the Debtor's schedules show a lack of equity in the Property. The Debtor's Schedule A asserts that the Property was worth $680,000 as of the petition date. ECF No. 8. The Foreclosure Judgment shows mortgage debt in the amount of $751,609.02, as of August 12, 2011. Mot., Ex. D, ECF No. 23. The Debtor does not allege that she made any payments to Rossrock after the Foreclosure Judgment was issued.

With respect to the fourth Stockwell factor, the Property is not necessary for an effective reorganization. To be necessary for a plan of reorganization, the Property must be "essential for an effective reorganization that is in prospect." In re Mitrany, No. 08-40034-ESS, 2008 WL 2128162, at *4-6 (Bankr. E.D.N.Y. May 16, 2008) (emphasis omitted) (quoting United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc., 484 U.S. 365, 375-76, (1988)); see also In re Pegasus Agency, Inc., 101 F.3d 882, 886 (2d Cir. 1996) (holding that "conjectur[e]" and "fanciful assumption[s]" in a chapter 11 plan for the disposition of real property demonstrated that the property was not necessary for an effective reorganization). In this case, the Debtor did not even attempt to confirm a feasible chapter 13 plan to repay the mortgage arrears on the Property. The plan proposed to pay $100 per month for 36 months, for a total of $3,600, which is grossly insufficient to cure Rossrock's substantial arrears.[8] Chapter 13 Plan, ECF No. 10.

With respect to the fifth Stockwell factor, stay relief would have been granted to Rossrock if it had sought stay relief prior to entry of the Foreclosure Judgment, because stay relief was then warranted under Section 362(d)(2). As discussed above, the Debtor had no

---

[8] The record does not reflect the precise amount of mortgage arrears as of the petition date. However, Ross's declaration in support of the Motion states that Cunningham "defaulted on the terms of the Note and Mortgage on November 1, 2007 and each month thereafter." Declaration in Support of Mot. ¶ 6, ECF No. 23. Therefore, the Debtor was in arrears for approximately fifty payments as of the petition date of December 2, 2011. The note required monthly payments of $3,522.45, although such amount was subject to change on March 1, 2011 when the interest rate was set to reset. ECF No. 23, Ex. A. Thus, the record shows that as of March 2011, the Debtor missed 40 payments amounting to arrears of at least $140,898, and that the amount of arrears could have only increased through the petition date.

equity in the Property as of the petition date and the Property was not necessary for an effective reorganization in prospect.

The sixth and seventh factors, the expense to Rossrock if the stay is not annulled, and detrimental reliance, also favor annulling the stay. Without retroactive stay relief, Rossrock would be forced to incur significant unnecessary expenses. Rossrock would be forced to seek again a judgment of foreclosure and sale from the state court, and then notice and hold a sale of the Property. See In re Taub, 438 B.R. 39, 51 (Bankr. E.D.N.Y. 2010) (annulling automatic stay because, *inter alia*, failure to annul would force parties to a divorce action to repeat one day of court proceedings); In re Pomerance, No. 10-12287-SMB, 2011 WL 1403034, at *4 (Bankr. S.D.N.Y. Apr. 13, 2011) (annulling the automatic stay, noting that "requiring the [l]andlord to relitigate the eviction would add additional expense"). Rossrock detrimentally changed its position when it conducted a sale of the Property, incurred costs in connection with the sale, and transferred its interest in the Property to Crush Holdings without first seeking relief from the automatic stay, of which it was unaware. Crush Holdings, which gave valuable consideration to RR REO in exchange for the Property and made improvements on the Property, also changed its position to its detriment. Joinder ¶ 1, ECF No. 28; See In re Williams, No. 09-44856-DEM, 2010 WL 411108, at *3 (Bankr. E.D.N.Y. Jan. 27, 2010) (annulling automatic stay was proper to avoid harm to third party that purchased property in good faith and without knowledge of automatic stay); In re Bright, 338 B.R. 530, 537-38 (B.A.P. 1st Cir. 2006) (same).

Thus, Rossrock's lack of notice, Cunningham's mistakes and bad faith, and the other Stockwell factors, discussed above, support annulling the automatic stay.

If a full presumption of delivery were invoked with respect to the December 19 Letter, despite the mailing deficiencies, it is still appropriate to annul the automatic stay under these

circumstances. Even if Ross's testimony is insufficient to rebut a full presumption of delivery, his testimony that he was unaware of the Debtor's bankruptcy case prior to July 2012 is entirely credible. If the December 19 Letter had come to Ross's attention, he would have emailed a copy of the letter to Rossrock's foreclosure counsel and filed it. Ross took such actions in July 2012 when he received Cunningham's Vacatur Motion, filed in state court, which made reference to the bankruptcy case. Ross testified credibly that his search of Rossrock's files uncovered no scanned copy of the December 19 Letter nor any record that it was forwarded to counsel. Tr. 81-82. Moreover, if Ross had known of the bankruptcy filing, there would have been no reason for Rossrock to delay in seeking stay relief. Ross's testimony and the record in the bankruptcy case support the conclusion that Ross had no actual knowledge of the Debtor's bankruptcy.

If Rossrock must be charged with notice or constructive knowledge of the Debtor's third bankruptcy case, less weight should be attributed to this factor. The Debtor bears substantial responsibility in this matter. After incorrectly listing Rossrock's address on her schedules, she failed to notify the bankruptcy court of Rossrock's correct address or otherwise attempt to communicate with Rossrock during her chapter 13 case. See Soares, 107 F.3d at 978 (holding that parties' errors can be evaluated when deciding whether to accord stay relief). Given that all the other factors strongly favor granting retroactive stay relief, the imputation of constructive knowledge to Rossrock as a result of the December 19 Letter would not alter the determination that retroactive stay relief is appropriate.

## **CONCLUSION**

For the reasons set forth above, Rossrock's motion is granted. A separate order shall issue.



**Dated: Brooklyn, New York**
**March 13, 2014**

**Carla E. Craig**
**United States Bankruptcy Judge**